FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

99 JUL -9 AM 10: 03

U.S. DISTRICT COURT
N.D. OF ALABAMA

LISTER HEALTHCARE CORPORATION,
INC.,

    Plaintiff,

vs.                              CASE NO. CV-98-J-885-NW

PHYSICIAN SALES & SERVICE, INC.,

    Defendant.

ENTERED

JUL 0 9 1999

## MEMORANDUM OPINION

Currently pending before the court is the defendant's motion for summary judgment (doc. 25), to which the plaintiff filed a response ("plaintiff's response"). Thereafter, the defendant filed a reply to plaintiff's response.

### I. Procedural History

Plaintiff commenced this action on March 13, 1998 by filing a complaint in the Circuit Court of Lauderdale County alleging that the defendant fraudulently represented profits the plaintiff could make by leasing medical testing equipment from the defendant to perform various medical tests. Complaint at ¶¶ 6-13. Plaintiff also alleged that defendant breached its contract with plaintiff by making false and fraudulent representations. Complaint at 5, ¶ 2. The defendant removed this case to the United Stated District Court for the Northern District of Alabama on April 13, 1998 (doc. 1), based on diversity of the parties and the amount in controversy being greater than $75,000.00. *See* 28 U.S.C. § 1332.

33

The court notes that the allegations of Count I, breach of contract, state a claim for fraud and do not state any further or additional basis for relief beyond those expounded in Count II. See Complaint at 5, ¶ 2 ("the Plaintiff was damaged by said breach in that even though the equipment operated according to the representations of the Defendant, the equipment did not generate the income as represented by the Defendant"). As such, the court shall consider both Count I, for breach of contract, and Count II, for fraud, as stating one cause of action.

This court rules as a matter of law that the evidence submitted in support of the plaintiff's claim for fraud does not support the allegations. The plaintiff has failed to raise any genuine issues of material fact for a jury to decide.

## II. Factual Background

In the light most favorable to the plaintiff, the facts on which the plaintiff relies are as follows:

The defendant is a seller of medical equipment. It does not manufacture the equipment itself. Depo. of Polk at 57. The plaintiff is a corporation of which the sole stockholder is Hal Livingston. Plaintiff's Response at 1; depo. of Livingston at 7. The plaintiff corporation owns the Sockwell Clinic; Dr. Sockwell is an employee of the plaintiff. Depo. of Livingston at 41, 65.

Defendant's sales representative, Pattie Polk, told the plaintiff that if she could review the logs of the Sockwell Clinic, she could determine whether the plaintiff could make a profit

2

by leasing medical testing equipment and performing the diagnostic work the plaintiff had previously sent out to independent laboratories. Plaintiff's Response at 2-3, depo. of Livingston at 39. Mr. Livingston testified as follows:

> Q. Did you have an idea at that time about what type of equipment you would like to have or that you would need for such a laboratory?
> A. I didn't know anything about clinical laboratory services other than Dr. McCoy told me that it had been very profitable for them. But as far as knowing anything about clinical lab services, I knew very – well, I didn't know anything about it.
> Q. Okay, was Dr. McCoy dealing with PSS at that time?
> A. Yes, and I think he still does.
> Q. Okay. And had Dr. McCoy purchased similar equipment to what you ultimately ended up getting?
> A. Don't know.
> Q. So tell me about your – so Patty said that they would like to place some equipment for you. What was the next conversation that you had with her?
> A. The best I can recall is that I would want to know something about what kind of revenues they would generate and what it would cost to operate it. And Patty told me that she could do that, **give me an idea** of what type of money that we **could make** operating the equipment. She said that she would need – well, I think she asked if we currently sent clinical laboratory work out, which we did, to Shoals Medical Lab. And when we do that, we keep a complete log of the procedures that are sent to or sent outside. And she said if she could have access to that log, she could take it and **make some type of determination** or she could compute for me what we would be able to do in that office. We made those logs available to her, and then she came back with a written **proposal** ... (emphasis added).

Depo. of Livingston at 39-40.

Ms. Polk then created a written proposal for the president of the plaintiff corporation, Mr. Livingston, and represented that he "could make a lot of money." Plaintiff's Response at 3-4, depo. of Livingston at 44. The plaintiff claims it wholly relied on the representations of Ms. Polk and the written materials she provided in deciding to enter the lease for this

3

equipment. Plaintiff's Response at 5. The plaintiff entered this lease for lab equipment on February 21, 1995, with a total cost of $62,165.00. Plaintiff's Response at 6. Depo. of Livingston at 52. Mr. Livingston testified as follows:

> Q. So if – your total property profit that you made at the end of the year, obviously, would depend on how many tests you ran; is that right?
> A. That's correct.
> Q. So if – for instance, if you only had – ran ten tests a year, you wouldn't make as much profit as if you ran a thousand tests a year; isn't that right?
> A. That's correct.
> ....
> Q. Okay. Well, you understood that the amount of money that you would make using this equipment would depend on how many tests you ran?
> A. I had no knowledge of clinical laboratory. I relied entirely on what Patty had to say.
> Q. You –
> A. When she gave me this brochure, she said, we're highly trained professionals; we can advise you in all these; we can maximize your potential for complete patient care. I mean, she said all these things... I relied on what Patty said. I had no idea how many patients we would be providing services to. I gave Patty a log or access to a log and she made that determination.

Depo. of Livingston at 51-52. Patty Polk was employed by the defendant as a salesperson on commission. Depo. of Polk at 13-17.

Mr. Livingston has owned the plaintiff corporation since 1991 or 1992. Depo. of Livingston at 8. Prior to this time, he was involved in joint ventures with physicians doing diagnostic ultrasound. *Id.* Before this, the plaintiff owned a durable medical equipment company. Depo. of Livingston at 23. Even earlier than this, the plaintiff worked as a respiratory therapist from 1973 to 1981. Depo. of Livingston at 26-27. Mr. Livingston also testified during his deposition that he had talked to Dr. Sockwell, at Sockwell Clinic, about

4

adding a clinical laboratory and had also talked to a competitor of the defendant about equipment. Depo. of Livingston at 37-38. Furthermore, Mr. Livingston had talked to another doctor, who told him that clinical laboratory services had been very profitable. *Id.* at 38.

The plaintiff did not realize the profits that were represented to him by Ms. Polk. When the plaintiff complained about not making the money represented, the defendant allegedly informed the plaintiff that the equipment had not had enough time to "work out" and that the defendant would "make it work." Plaintiff's Response at 6. Another of the defendant's employees, Chris Todd, reviewed the plaintiff's operation and made several suggestions to enable the plaintiff to turn a profit in using the lab equipment. Plaintiff's response at 7, 8.

The plaintiff alleges that Hal Livingston became suspicious and in September, 1996, had one of his employees, Susan Hall, undertake an analysis of the actual cost per test compared to that represented by the defendant. Plaintiff's Response at 8, 9; depo. of Livingston at 70. He also learned in September of 1996 that some of the tests Ms. Polk represented as being particularly profitable would not be paid for by the insurance companies or Medicare in particular. Depo. of Livingston at 126. Mr. Livingston testified that he found this out in September of 1996. He states that he found in Medicare literature that they did not pay for some of these tests and assumes that Ms. Polk knew this as well.[1] *Id.* at 126-127.

---

[1] Mr. Livingston does not allege that this information was not available to him prior to this time.

5

The plaintiff ceased use of the equipment in April of 1997, but was still making the lease payments at the time of his deposition, January 26, 1999. Depo. of Livingston at 70, 112. Mr. Livingston testified that the costs of the reagents (the controls, calibrations and liquids necessary to operate the equipment) exceeded the projections of the defendant. Depo. of Livingston at 82.

The plaintiff alleges that Ms. Polk, in submitting a proposal to the plaintiff that showed a possible profit of $400,000.00 per year committed actionable fraud. Plaintiff's Response at 11. However, Mr. Livingston testified in his deposition that he understood that Medicare, Blue Cross and other insurers pay different amounts for testing and that the amount he made depended on how many patients had each test run on them. Depo. of Livingston at 47, 48, 50, 87.

Mr. Livingston also stated at deposition that independent of the laboratory, Sockwell Clinic did not make any money, but probably broke even due to the overhead being higher than it should have been. Depo. of Livingston at 78.

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

6

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir. 1987). "The moving party is entitled to judgment as a matter of law if the nonmoving party cannot sufficiently show an essential element of the case to which the nonmoving party has the burden of proof." *Cornelius v. Town of Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding Corp.*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252.

8

Summary judgment is appropriate where the moving party shows an absence of evidence to support an essential element of the nonmoving party's case. *Weiss v. School Board of Hillsborough County*, 141 F.3d 990, 994 (11th Cir. 1998).

## IV. Legal Analysis

To establish their fraud claim, the plaintiff must show a misrepresentation of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or made by mistake and innocently and acted on by the opposite party. Ala. Code § 6-5-101 (1975). The evidence in this case establishes that Ms. Polk told Mr. Livingston that if the plaintiff leased the equipment, he could make "lots" of money by performing medical testing. The defendant argues the representations regarding the profits that the plaintiff could make in this manner were not "statements of material fact", but rather predictions of future events. *See Crowne Investments, Inc. v. Bryant*, 638 So.2d 873, 877 (Ala. 1994) ("A mere statement of opinion or prediction as to events to occur in the future is not a statement of "material fact" upon which individuals have the right to rely and therefore, it will not support a fraud claim"). The plaintiff acknowledges that these representation were contained in a written proposal. Depo. of Livingston at 40; Plaintiff's response at 3. Clearly, the sole purpose of the proposal (or proforma) was to entice the plaintiff to lease the equipment.

The plaintiff relies on *State Farm Fire and Casualty Co. v. Owen*, 729 So.2d 834 (Ala.1998), for the proposition that Ms. Polk had superior knowledge and training to that of

9

the defendant and therefor the plaintiff was entitled to rely on the defendant's profit projections. In *State Farm v. Owen*, the Alabama Supreme Court considered questions of fraudulent suppression which is not at issue here. 729 So.2d at 837. The plaintiff does not allege that the defendant suppressed an existing material fact, but rather that the information provided by the defendant was not accurate.[2] As such, even assuming that the court found that Ms. Polk as a representative of the defendant had superior knowledge, this is of no consequence in the determination of the motion for summary judgment as the plaintiff does not allege that the defendant had any duty to disclose a material fact which it suppressed.

The sole question before this court is whether or not the plaintiff's alleged lost profits were caused by actionable fraud on the part of the defendant. Plaintiff states that it did not make "any" money in doing the medical testing even though it followed defendant's representations.[3] However, the plaintiff puts forth no evidence to support this allegation that it lost money. Even assuming that the plaintiff did lose money in its lease of the medical equipment, the plaintiff has neither established nor alleged that this was through any fault of

---

[2]Suppression of a material fact requires 1) a duty to disclose the facts; 2) concealment or nondisclosure of material facts by the defendant, 3) inducement of the plaintiff to act and 4) action by the plaintiff to his injury. *Ford Motor Co. v. Rice*, 726 So.2d 626, 627 (Ala. 1998); citing *Foremost Ins. Co., v. Parham*, 693 So.2d 409, 423 (Ala.1997).

[3]Mr. Livingston testified that the complaints he has about Patty Polk are "that she came to me, analyzed the practice that we're talking about, the utilization of services or for the clinical laboratory services. She took data from our office, analyzed it and made a representation that if I would buy her equipment that I would be able to generate over four hundred thousand dollars a year in revenues and profits. She made a representation in there about the costs of performing these tests, and it was incorrect." Depo. of Livingston at 124.

10

the defendant. The plaintiff alleges that the cost per test was much higher than the defendant represented it to be. However, the plaintiff does not state that any of the formulas used by the defendant to calculate his costs were incorrect. Instead, the plaintiff states only that the profits alleged were overly optimistic.

> As the Alabama Supreme Court quoted in affirming a directed verdict:
>
> How was [the plaintiff] damaged? In this case, certainly, from the years 1983, '84 and '85 there were less profits. As a matter of fact, those were losses .... And certainly, there is evidence here of money paid by [the plaintiff] when he purchased the business.... It is true that there were lost profits or losses in the operation, but those things are based on variables that we would have to speculate upon; about how he ran the business, how he advertised or didn't advertise, how people like him ....

*Patel v. Hanna*, 525 So.2d 1359, 1361 (Ala. 1988).[4]

The plaintiff here must prove that the defendant made an untrue statement concerning a material existing fact. An "existing fact" does not normally encompass a promise of future performance. *Lawson v. Cagle*, 504 So.2d 226, 227 (Ala.1987). It does not include an opinion or a prediction. *Id*. In the facts before this court, Mr. Livingston states in deposition that what he was told the plaintiff could collect for the procedures were projections. Depo. of Livingston at 85. He further testified:

> Q: Right. And you've had experience with that where different payers pay different amounts for different procedures?

---

[4]While *Patel v. Hanna* was decided under the "justifiable reliance" standard and not the "reasonable reliance" standard of *Foremost Ins. Co., v. Parham*, 693 So.2d 409, 423 (Ala.1997), which this court must apply, the facts of that case as well as the analysis undertaken by the court are most instructive in the facts before this court.

11

> A. That's right. And –
> ....
> Q. So this was nothing new to you in 1995, that the amounts you actually collected could be different, depending on which insurance company or other payer was paying for the services?
> A. That's correct.

Depo. of Livingston at 88. Mr. Livingston also testified that he understood different tests had different costs associated with them and that the doctor makes the decision on whether a particular test is run on a particular patient. Depo. of Livingston at 99. He also knew that tests had to be medically necessary before Medicare paid for them. *Id.* at 99-100. Mr. Livingston stated that, in 1995, he understood that Dr. Sockwell would make the decision of what tests to run on a patient based upon his need for information about that patient. Depo. of Livingston at 102. He understood he could not tell Dr. Sockwell to run a certain number of tests per year. Depo. of Livingston at 109-110. However, he was under "the general impression that it was okay to do these tests on everybody who came through the door." Depo. of Livingston at 115.[5]

---

[5]*But see* deposition of John Christopher (Chris) Todd:
> You know, the only other things that I can say are we've tried to use consultants whenever we could, and the consultants were actually a little bit afraid to deal with Mr. Livingston because he asked them to provide information about how many times you could run a particular test on a patient instead of –
> And typically, we cannot provide really those types of – we can suggest things, but typically we cannot factually state or say how many times you should run a particular test on a patient and would not want to give that kind of clinical advise to a physician.

Depo. of Todd at 69, evidentiary submissions of plaintiff.

12

Although Mr. Livingston alleges that he relied on the defendant's representations in signing the lease, the court finds that the plaintiff knew or should have known that the profit numbers submitted to the plaintiff were a prediction of what could be earned if the assumptions proved correct. *See* Plaintiff's Response at 5-6.

To establish a cause of action for fraud, a buyer, or lessee here, must first establish that the seller's statements were representations of fact and not mere statements amounting to nothing more than sales talk or "puffery." *Gable v. Boles*, 718 So.2d 68, 70 (Ala.Civ.App. 1998). Statements of opinion amounting to nothing more that "puffery" are not statements of material fact upon which an individual has a right to act and therefore, will not support a fraud claim. *Id.*, citing *Fincher v. Robinson Bros, Lincoln-Mercury , Inc.*, 583 So.2d 256, 259 (Ala.1991). *See also Hughes v. Hertz Corporation*, 670 So.2d 882, 885 (Ala.1991). Because the facts forming the basis for plaintiff's complaint are based on representations that the plaintiff would make "lots" of money, or would make "$400,000.00 a year" if he leased the equipment, this court finds them to be sales talk, or "puffery." The dollar amount which swayed the plaintiff into signing the lease was clearly based on assumptions, predictions and opinions, not on existing fact. As such, these statements cannot support a claim for fraud.

Moreover, the court finds that the plaintiff had at its disposal the exact records used by the defendant to generate this information as well as access to the Medicare regulations stating what Medicare would pay per test. *See e.g.,* depo. of Donna Romine at 15, 16 (testifying that she was sure that Hal Livingston looked at the Medicare and Blue Cross fee

13

schedules as they came in to determine whether to change what he was charging for laboratory procedures). Here, the facts were equally known or knowable to each side. *See Randell v. Banzhoff*, 375 So.2d 445, 448 (Ala.1979) ("**If** the facts are not equally known to both sides, **then** a statement of opinion by the one who knows the facts best involves very often a statement of material fact (emphasis added)").

The court cannot find that the plaintiff was acting reasonably in relying solely on what the defendant represented as profit and undertaking no independent study. *See Foremost Insurance Co v. Parham*, 693 So.2d 409 (Ala.1997). In *Torres v. State Farm Fire & Casualty Co.*, 438 So.2d 757, 758-59 (Ala.1983), the Alabama Supreme Court stated that "it is the policy of courts ... to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests."

By relying solely on what the sales representative told him the plaintiff could earn although Mr. Livingston had the information to verify her suppositions, the plaintiff failed in its duty to exercise some measure of precaution. Mr. Livingston, president and sole stockholder of the plaintiff corporation, had by his own testimony twenty-two years experience in the medical field at the time he entered the lease in dispute. The plaintiff's reliance on the defendant's projected profit if he leased the equipment was not reasonable as

a matter of law.[6] The plaintiff's reliance on sales brochures stating things such as "highly trained professionals who offer to your practice a sales and consultative service" was not reasonable as a matter of law either.[7] This court finds that the sole stockholder of the plaintiff corporation is a businessman with extensive experience in the medical field who made a poor business investment. This alone is wholly insufficient to give rise to a cause of action for fraud.

This court, having considered all of the evidence submitted by the parties, finds that the plaintiff fails in its burden to show any reasonable reliance on its part on the defendant's presumptions, an essential element of the case to which the plaintiff has the burden of proof. *See Cornelius,* 880 F.2d at 351. The evidence here is so one-sided that the defendant must prevail as a matter of law. *Holcombe v. Alabama Dry Dock & Shipbuilding Corp.*, 1998 WL 758012 (S.D.Ala.); citing *Anderson*, 477 U.S. at 251-252.

---

[6]This is especially true in light of the fact that the Sockwell Clinic employed Melanie Woods, an LPN, who gave the following testimony by affidavit:
> I was formally (sic) employed by Dr. Narayan in Leighton as an LPN. While employed with Dr. Narayan, he purchased a Gemstar 2 Lab Testing Equipment Unit, and I operated it for him for several months (approximately one year).
> The operation of this equipment was a losing proposition, and the equipment was abandoned so far as operations, and was placed in a closet, and left unused because it was not financially feasible to operate the same.
> I went to work for Dr. Sockwell in February of 1992, and I am still employed by him.

Affidavit of Melanie Woods, submitted as part of the plaintiff's evidentiary submissions, at 1.

[7]This court notes that even in the light most favorable to the plaintiff, no evidence has been presented that the defendant did not have "highly trained professionals who offer ... sales and consultative service." Plaintiff's Response at 2.

15

The defendants' motion for summary judgment on counts I and II of the complaint be and hereby are **GRANTED**. This case is **DISMISSED** with **PREJUDICE**.

**DONE** and **ORDERED** this the ___9___ day of July, 1999.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

16